UNITED STATES of America,
Plaintiff,

v.

1. ALL FUNDS IN THE ACCOUNT OF PROPERTY FUTURES, INC., Account No. 213478, at Colonial Bank, and 2. The Real Properties Located at 2801 Gateway Drive, Pompano Beach, FL, 32100 U.S. Highway 19 North, Palm Harbor, FL, 3040 Industry Drive, East Hempfield, PA, and 111 Windsor Drive, Oak Brook, IL, and All Lease Payment Monies Being Held in Escrow by the United States Marshals Service for These Real Properties, Defendants.

Case No. 08–81244–CIV.

United States District Court,
S.D. Florida.

Oct. 4, 2011.

William H. Beckerleg, Jr., William T. Shockley, United States Attorney's Office, Fort Lauderdale, FL, for Plaintiff.

## *ORDER*

KENNETH A. MARRA, District Judge.

This cause comes before the Court upon Plaintiff's Motion to Strike Claims of Gannon Family Company, LLC and Bayhill Development, LLC for Lack of Standing and/or for Partial Summary Judgment (DE 198).

THIS MATTER was referred to the Honorable Linnea R. Johnson, United States Magistrate Judge, Southern District of Florida. A Report and Recommendation, dated July 23, 2010, has been filed, recommending that the District Court grant in part and deny in part the motion. Specifically, the Magistrate Judge recommends that (1) the portion of the motion seeking partial summary judgment be granted; (2) the portion of the motion seeking an order striking the claims be denied as moot; and (3) the motion for attorney's fees be denied without prejudice. (DE 271.)

The Court has conducted a *de novo* review of the entire file and record herein.

The Court has considered the objections and the responses to the objections. Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1) United States Magistrate Judge Johnson's Report and Recommendation be, and the same is **RATIFIED, AFFIRMED and APPROVED** in its entirety

2) Plaintiff's Motion to Strike Claims of Gannon Family Company, LLC and Bayhill Development, LLC for Lack of Standing and/or for Partial Summary Judgment (DE 198) is **GRANTED IN PART AND DENIED IN PART.** Partial summary judgment is **GRANTED.** The motion to strike is **DENIED AS MOOT.** The motion for attorney's fees is **DENIED WITHOUT PREJUDICE.**

3) Plaintiff shall submit a proposed judgment **within 10 days of the date of entry of this Order.**

**DONE AND ORDERED.**

## *REPORT AND RECOMMENDATION*

LINNEA R. JOHNSON, United States Magistrate Judge.

**THIS CAUSE** is before the Court[1] on Plaintiff United States of America's ("Plaintiff" or "Government") Motion to Strike Claims of Gannon Family Company, LLC ("Gannon") and Bayhill Development, LLC ("Bayhill") for Lack of Standing and/or for Partial Summary Judgment (D.E. # 198), which is now ripe for adjudication.[2] On May 17, 2010, the Court conducted a hearing on the Motion. Present at that hearing were counsel for Bayhill and for Gannon, as well as counsel for

---

1. On February 1, 2010, the Honorable Kenneth A. Marra, United States District Judge, referred all pre-trial matters to the undersigned "for appropriate disposition or report and recommendation." (DE 168.)

2. The Motion also seeks the award of fees and costs. (DE 198 at 8–9.)

Claimant ADT, the current lessor of the Defendant Properties, who observed the proceedings.[3] Upon the request of Bayhill, the Court allowed the parties to file post-hearing submissions discussing the issues raised at the hearing. Upon consideration of the pleadings filed by parties, the evidence submitted, the arguments presented by the parties at the hearing and the relevant case law, the undersigned has decided to resolve the Motion by way of summary judgment and, for the following reasons, recommends said Motion be granted.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

This is an *in rem* forfeiture action filed by the Government against two categories of property referred to in the caption of the Second Amended Verified Complaint as Defendant Property 1 and Defendant Property 2. The property referred to as Defendant Property 1 concerns all funds in the account of Property Futures, Inc. ("Property Futures"), Account No. 213478, at Colonial Bank. The property referred to

as Defendant Property 2 concerns four parcels of real property located in Pompano Beach, Florida, Palm Harbor, Florida, East Hempfield, Pennsylvania, and Oakbrook, Illinois, as well as all lease payment monies being held in Escrow by the United States Marshall's Service incident to said properties (the "Defendant Properties"). The Defendant Properties were purchased from and leased back to ADT Security Services, Inc. ("ADT"), an alleged victim of fraud in the underlying criminal case of *United States v. Vincent F. Artuso, et. al.*, Case No. 08–60014–CR–MIDDLEBROOKS,[4] by four limited liability companies (the "Buyer/Lessor LLCs").[5] It is the Notices of Claim filed against the Defendant Properties to which the instant Motion to Strike and/or for Partial Summary Judgment filed by the Government (D.E. # 198) relates.

The Notices of Claim which are the subject matter of the instant Motion to Strike and/or for Partial Summary Judgment have been filed by Gannon Family Company, LLC ("Gannon") (D.E. # 103) and Bayhill Development, LLC/Bayhill Development, Inc. (collectively "Bayhill")[6] (D.E.

---

**3.** A transcript of the entire hearing proceedings is available as part of the record. (DE 243.) In presenting argument, counsel for Bayhill relied on the pleadings, arguments, and material already of record. (5/10/10 Hearing Transcript (hereinafter Hr'g Tr.) at 5, ll. 3–6.) The Government provided additional exhibits, numbered 1 and 2, which were received in evidence without objection. (Hr'g Tr. at 6, ll. 13–18.)

**4.** The instant in rem forfeiture action is based on the Government's claim that the properties referred to in the caption of the case as Defendant Property 1 and Defendant Property 2 represent proceeds derived, directly or indirectly, from the illegal mail fraud, wire fraud and racketeering activities of the defendants in the underlying criminal case and are therefore forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C).

**5.** The Buyer/Lessor LLCs holding title to the four properties are Efficient Realty & Devel-

opment, Inc., L.L.C., a Florida limited liability company; Westmore Properties, L.L.C., a Florida limited liability company; Efficient Realty & Development, LLC, a Pennsylvania limited liability company; and OakBrook Properties, LLC, an Illinois limited liability company. (DE 198 at 3.)

**6.** Docket Entry No. 105, captioned "Claim" states at the outset that, "Bayhill Development, LLC ("Bayhill"), by and through its managing member, Thomas Rossi, hereby makes this claim to the Defendant properties and currency set forth in the caption above, as hereinafter further specified: This claim is made to a ten percent (10%) interest in [three of the Buyer/Lessor, LLCs and all lease payment monies being held in escrow]." In a footnote following the defined term "("Bayhill")", the Claim notes that, "Bayhill Development LLC has at times been referred to interchangeably as Bayhill Development, Inc. as a function of typographical errors. This

#105), each of which assert a minority interest in the Defendant Properties owned by the Buyer/Lessor LLCs.[7] On September 4, 2009, Gannon filed a Verified Notice of Claim related to an alleged 9.9% ownership interest in the four Defendant Properties (DE 103). Bayhill filed a claim for a 10% interest in three of the Defendant Properties on September 7, 2009 (DE 105).[8] On April 6,2010, the Government filed the Motion at bar, entitled the Government's Motion to Strike and/or for Partial Summary Judgment, which seeks partial summary judgment on, or an order striking, the Notices of Claim filed by Gannon and Bayhill.[9] The Record also contains a Response by Bayhill Development, LLC (which the Gannon Family Company adopted (DEs 220 and 221)),[10] as well as a Reply (DE 226) and a Supplemental Reply (DE 233).

## B. *THE UNDISPUTED FACTS*

The following facts have been taken directly from the Government's Statement of Undisputed Facts (D.E. # 198), which unless otherwise noted, the Court finds either are not or can not reasonably be disputed:

1. On or about February 5, 2002, ADT sold three properties to three difference companies, and entered into lease agreements with the three companies, which leased the properties back to ADT. Those three sale and leaseback transactions were as follows: (1) the office building and property at 2801 Gateway Drive, Pompano Beach, Florida (hereinafter referred to as the "Pompano Beach property") was sold to Efficient Realty & Development L.L.C., a Florida limited liability company (hereinafter referred to as "Efficient Realty FL"); (2) the office building and property at 32100 U.S. Highway 19 North, Palm Harbor, Florida (hereinafter referred to as the "Palm Harbor property") was sold to Westmore Properties, LLC, a Florida limited liability company; and (3) the

claim is made on behalf of both entities and the term 'Bayhill' is intended here to refer to both entities" (D.E. # 105, p. 1, fn 1). Accordingly. for purposes of identifying the party on whose behalf the claim at Docket Entry No. 105 was filed, the Court, in deference to Bayhill's request, shall refer to Bayhill Development, LLC and Bayhill Development, Inc. collectively as "Bayhill."

7. The Court notes that Gannon's Claim runs to all four properties owned by the Buyer/Lessor, LLCs, while Bayhill's Claim runs to only three such properties. Nonetheless, for purposes of discussion the Court shall continue to use the defined terms, Defendant Properties and Buyer/Lessor, LLCs regardless of whether the Court is referring to Bayhill's claimed interest in three of the Properties or Gannon's claimed interest in all four. Additionally, the Court is aware that in its Response to the Government's Motion, Bayhill asserts that its Claim is filed not only on behalf of itself, but also is "expressly" filed by Bayhill on behalf of the Buyer/Lessor, LLCs of which it is a member. However, For reasons explained more fully, *infra* pgs. 1321–23, the Court finds that as a technical matter, the Claim filed by Bayhill has been filed only on its own behalf and not on behalf of the Buyer/Lessor, LLCs, as Bayhill contends.

8. The properties to which Bayhill's claim pertains are located at Pompano Beach and Palm Harbor, Florida, and in Lancaster, Pennsylvania. (DE 103 at 2.)

9. The Government expressly states that its Motion to Strike and/or for Partial Summary Judgment relates only to the Verified Notices of Claim filed by Gannon (D.E. # 103) and Bayhill (D.E. # 105) to the property referred to in the caption as Defendant Property 2 (the "Defendant Properties") and not to the Verified Notice of Claim filed on behalf of Property Futures, Inc., to the property referred to in the caption as Defendant Property 1.

10. As a result, references to any briefing by Bayhill adopted by Gannon will appear herein as Claimants, while specific assertions by only one claimant will be referenced by the individual name.

office building and property at 3040 Industry Drive, West Hempfield, Lancaster County, Pennsylvania (hereinafter referred to as the "Lancaster property") was sold to Efficient Realty & Development, LLC, a Pennsylvania limited liability company (hereinafter referred to as "Efficient Realty PA"). See Attachments 1, 2, 3. These are the first three real estate properties listed in Defendant Property 2. (DE 198 at 3–4.)

2. At the time of the sales, the Operating Agreements of Efficient Realty FL and Efficient Realty PA indicated that Robert Gannon was the sole member and had a 100% ownership interest in both companies (Attachment 5, Bates labels GE2–1.356 and 358, and Attachment 6, Bates labels GE3–1.352 and 354), and the Operating Agreement of Westmore Properties, LLC indicated that John Artuso was the sole member and had a 100% ownership interest in Westmore Properties, LLC (Attachment 7, Bates labels GE 1–1.407 and 409). (DE 198 at 4.)

3. After the February 2002 closings, however, an attorney prepared Amended and Restated Operating Agreements changing the ownership of all three companies and sent a letter dated April 11, 2002 to Gregory Orr [11] (Attachment 8) requesting that the respective parties sign the Amended and Restated Operating Agreements for Efficient Realty FL (Attachment 9), Westmore properties, LLC (Attachment 10), and Efficient Realty PA (Attachment 11). The Amended and Restated Operating Agreements for Efficient Realty FL and Westmore Properties, LLC, although executed on or after April 11, 2002, indicated that they were "effective as of the 5th day of February, 2002." The Amended and Restated Operating Agreement for Efficient Realty PA, although executed on or after April 11, 2002, indicated that it was "effective as of the 4th day of February, 2002." Each of the [sic] these three Amended and Restated Operating Agreements reflected that the percentage ownership interests of the three companies were divided among the following five member companies in the indicated percentages: J & G Associates, LLC (50.1%), Longhill Holdings, LLC (20%), CAE Enterprises, Inc. (10%), Bayhill Development, LLC (10%) and Property Futures, Inc. (9.9%). See Attachment 9 at G–104 to 106; Attachment 10 at G–35 to 37; and Attachment 11 at G–174 to 176. In July 2004, the ownership interests of Property Futures, Inc., in each of the three companies were assigned to Gannon Family Company, LLC. See Attachment 14. (DE 198 at 5.)

4. On or about September 18, 2003, ADT sold the office building and property at 111 Windsor Drive, Oak Brook, Illinois (hereinafter referred to as the "OakBrook property") to OakBrook Properties, LLC, an Illinois limited liability company, and entered into a lease agreement with OakBrook Properties, LLC, which leased the property back to ADT. See Attachment 4. This property is the fourth property listed in Defen-

11. Gregory Orr was one of the defendants convicted of RICO conspiracy (count 1), mail fraud (counts 2–10), wire fraud (counts 11–25), money laundering conspiracy (count 26), and money laundering (counts 27–41) concerning Defendant Property 2 in *United States v. Vincent F. Artuso, et al.,* Case No. 08–60014–Cr–Middlebrooks(s). Other defen- dants convicted in that case were Vincent F. Artuso, John Vincent Artuso, and Philip Edward Forgione. William Larry Horton pleaded guilty to RICO conspiracy in an earlier indictment in the same case. Robert M. Gannon's motion for judgment of acquittal was granted at the conclusion of the Government's case-in-chief. (DE 198 at 4, n. 4.)

dant Property 2 in the caption of this case. (*Id.*)

5. At the time of the sale, the Operating Agreement of OakBrook Properties, LLC reflected that the sole member of OakBrook Properties, LLC was OakBrook Property Management, LLC, whose three members were GJO Associates, LLC, Longhill Holdings, LLC, and Robert M. Gannon (Attachment 12, BB & T–1521 to 1522). The Operating Agreement of OakBrook Property Management, LLC reflected that the percentage ownership interests were divided among the following three members in the indicated percentages: GJO Associates, LLC (60%), Longhill Holdings, LLC (30%), and Robert Gannon (10%). See Attachment 13, pages 34 and 35. In July 2004, Robert M. Gannon's ownership interest in OakBrook Property Management, LLC was assigned to Gannon Family Company, LLC. See Attachment 14. (DE 198 at 5–6.)

6. Gannon Family Company, LLC, through the Amended and Restated Operating Agreements of Efficient Realty FL, Westmore Properties, LLC, and Efficient Realty PA (Attachments 9, 10 and 11), which were signed on or after April 11, 2002 (Attachment 8), and through the subsequent assignment effective July 15, 2004 from Property Futures, Inc., (Attachment 14), as stated in its claim (DE 103), is a member, and owns a 9.9% share, of Efficient Realty FL, Westmore Properties, LLC, and Efficient Realty PA. Gannon Family Company, LLC, through the Operating Agreement of OakBrook Property Management, LLC (Attachment 13), and through the subsequent assignment effective July 15, 2004 from Robert Gannon (Attachment 14), as stated in its claim (DE 103), is a member, and owns a

10% share, of OakBrook Property Management, LLC, which owns 100% of OakBrook Properties, LLC (Attachment 12). See Attachments 9 through 14. (DE 198 at 7–8, ¶ 2.)

7. As to Bayhill Development, LLC, the Amended and Restated Operating Agreements of Efficient Realty FL, Westmore Properties, LLC, and Efficient Realty PA (Attachments 9, 10 and 11), which were signed on or after April 11, 2002 (Attachment 8), reflect that an entity that is referred to as "Bayhill Development, LLC, a New York limited liability company" is a member, and owns a 10% share, of Efficient Realty FL, Westmore Properties, LLC, and Efficient Realty PA. See Attachments 8 through 11. (DE 198 at 8, ¶ 3.)

In response to the Government's Statement of Undisputed Facts, Claimants have filed their own so-called Statement of Material Facts which they claim to be in dispute.[12] Except where otherwise noted, however, the Court finds the Claimants' so-called Statement of Material Facts in Dispute, to be nothing more than a red-herring designed to manufacture disputes where none in fact exist.

In numbered paragraphs 1–3 of their Statement, Claimants essentially assert that without necessary discovery they are unable at this time to either confirm or dispute the representations made by the Government in the same numbered paragraphs. The numbered paragraphs of the Government's Statement of Undisputed Facts to which Claimants refer, paragraphs 1–3, merely set forth the history of the sale/leaseback transactions regarding the various LLCs and PAs, by reference to the various Operating Agreements, Amended and Restated Operating Agreements, and other company documents, all

---

**12.** *See* Claimants' Statement of Material Facts, attached as Ex. "9" to Claimants' Response in Opposition to the Government's Motion to Strike. (D.E. # 218–9)

of which the Government attaches or refers to as being a matter of record. Claimants do not dispute the genuineness of the Government's attached documents, nor otherwise dispute the Government's representations regarding the substance of the documents attached. Nonetheless, in numbered Paragraphs 1–3 of their Statement, Claimants seek to avoid summary judgment by averring that this matter is somehow not ripe for summary judgment because of lack of discovery.

These assertions are rejected as disingenuous. Pleadings of Record in this case unquestionably demonstrate that at least by the time of the May 17, 2010 hearing on this matter, Claimants believed and expressly stated their position that the issues raised in the instant Motion for Summary Judgment could and should be resolved upon the pleadings and evidence then of Record, and that no additional discovery was needed.[13] Claimants reaffirmed their view that no further discovery was needed, at the May 17, 2010 hearing, wherein the following soliloquy took place: *"COURT: You agree. All right. How do you wish to proceed? Are you just relying on argument or pleadings or how? COUNSEL FOR CLAIMANTS: Just relying on arguments and pleadings and the material in the record already, your honor. We don't think there is anything of an evidentiary nature that needs further to be put in the record, your honor."* At no time before or since the hearing have Claimants filed a motion to lift the stay they previously agreed to, or in any other manner requested the court allow it additional time to conduct discovery. For Claimants to now contend that a ruling on summary judgment is premature or would somehow be inappropriate because of an alleged need for additional discovery, borders on the contemptuous. Moreover, Claimants fail to explain in any sufficient detail what discovery they now assert is needed, but rather vaguely refer instead to their inability to discern "the accuracy ... of the representations of fact concerning the Oakbrook Il. property" or "... when the amended restated Operating Agreements referred to by the Government were signed." (D.E. # 218–9, p2). The agreements speak for themselves and there is no cogent argument made as to what legal issues presently before the Court would be explained by such discovery. In sum, Claimants' protestations that they need discovery is nothing more than disingenuous fog designed to obfuscate the real issues present in the Motion.

In numbered paragraphs 4–5 of their Statement, Claimants object that certain facts represented by the Government in the same numbered paragraphs of their Statement of Undisputed Facts, are not facts at all, but rather are legal conclusions. This Court agrees and for this reason has not included these so-called "facts" herein as either recitations or as findings of fact.

Numbered paragraph 6 avers that Bayhill filed a claim on its own behalf and on behalf of the larger Buyer/Lessor LLCs of which it is a member. Rather than a disputed issue of fact, paragraph 6 consists of a legal conclusion more properly the province of the court and not the parties. In any event the Court does not include this statement or the reverse of this statement in any finding of fact and instead discusses the legal effect of such purported filing in this court's legal analysis which follows.

---

13. *See* Government's Motion requesting the Court rule on the Government's Motion to Strike and/or for Partial Summary Judgment at the outset and before undertaking discovery, which Claimants did not oppose (see D.E. # 208) and Claimants' subsequent Consented Motion to Stay Discovery (D.E. # 210).

Numbered paragraph 7 avers that the interest of all members of the four larger entities has been forfeited except for the interest of claimants herein. (DE 218–9.) Such is nothing more than claimants' restatement of what is at issue before the court in this litigation. That is, whether or not the remaining members have standing to file a claim in this *in rem* civil forfeiture action and whether or not the minority member Claimants have standing to file on their behalf. As such, numbered paragraph 7 does not constitute a disputed material fact so as to preclude summary judgment.

Numbered paragraph 8 recites, "Bayhill Development, LLC had bank accounts in its name, filed tax returns in its name, received K–1 forms in connection with income received form the properties at issue in this case, held itself out as an LLC at all times relevant to the transactions at issue in this case, and was treated by all other interested parties in the transactions at issue in this case as an LLC [Exh. H– Rossi Declaration]." (DE 218–9 at 3.) Such statement is a characterization of record evidence that is not in dispute. The effect of such actions is considered by this court in the legal analysis of whether or not Bayhill Development, LLC is a legal entity at all and, if so, whether or not it has standing to file this claim. As such, this statement is not a disputed material fact so as to preclude summary judgment. Rather such are issues of law for the court.

Finally, numbered paragraph 9 avers, "Bayhill Development LLC acquired its *ownership* in Westmore, Efficient (FL), and Efficient (PA) LLCs after the transactions involving the sale and leaseback of the properties at issue had been consummated. Amended Restated Operating Agreements." (DE 218–9, p. 4) (emphasis added). In that regard, the written agreements in this record speak for themselves. Whether or not the effect of the agreements was to provide an *ownership* interest as defined in 18 U.S.C. § 983(a)(4)(A) is a legal issue to be determined by the court herein.

## II. STANDARD OF REVIEW

Summary judgment is only appropriate where no genuine disputed issue of material fact is present, entitling the moving party to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); FED.R.CIV.P. 56. The framework for deciding a summary judgment places the initial burden on the moving party to inform the court of the basis for its motion, identifying portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that the party believes show the absence of a genuine disputed issue of material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). An issue of fact is genuine only when a reasonable jury could make a finding for the non moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the moving party fails to discharge its initial burden, then the court must deny the motion for summary judgment without the need to address the type of showing made by the non movant. *Fitzpatrick*, 2 F.3d at 1116 (quoting *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). In the event that the movant carries its initial burden, then the burden shifts to the non movant to show the existence of a genuine issue as to any material fact. *Fitzpatrick*, 2 F.3d at 1116. The opponent, however, "must do more than simply show that there is some metaphysical doubt" as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Further, responsibility to make a showing varies depending on whether the legal issues pertaining to the facts are to be proven by the movant or by the non movant at trial. *Fitzpatrick,* 2 F.3d at 1115. The Eleventh Circuit interprets *Celotex* to mean that if the party moving for summary judgment has the burden of proof at trial, that party must make an affirmative showing of the absence of a genuine issue of material fact by supporting the summary judgment motion with uncontroverted, credible evidence that would entitle the party to a directed verdict.[14] *Fitzpatrick,* 2 F.3d at 1115; *U.S. v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1438 (11th Cir. 1991). In other words, the moving party needs to show that for all the essential elements of its case for which it carries the burden of proof at trial, there would not be a reasonable jury that could find for the non moving party. *Id.* If the moving party makes such a showing, summary judgment should be entered on its behalf unless the non moving party responds with "significant, probative evidence demonstrating the existence of a triable issue of fact." *Fitzpatrick,* 2 F.3d at 1115 (quoting *Four Parcels,* 941 F.2d at 1438).

In assessing whether or not the moving party has satisfied its burden, the court must view the evidence and all factual inferences arising therefrom in the light most favorable to the non moving party. *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 439 (11th Cir. 1996). The non moving party must respond either by affidavit(s) or as otherwise provided in FED.R.CIV.P. 56(e). *Walker v. Darby,* 911 F.2d 1573, 1576–77 (11th Cir. 1990). A non movant, however, cannot rest on "mere allegations," and must " 'set forth' ... 'specific facts' " in opposing a summary judgment. *Purcell v. Toombs*

*Co., Ga.,* 400 F.3d 1313, 1323 (11th Cir. 2005) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting FED.R.CIV.P. 56(e))). The non moving party cannot oppose a motion for summary judgment supported by affidavit(s) by simply relying on legal conclusions, on mere allegations, on unsupported written denials of the opposing party's pleading, or on inadmissible trial evidence. *Adkins v. Cagle Foods JV, LLC,* 411 F.3d 1320, 1323–24 (11th Cir. 2005); *Valdivieso v. Atlas Air, Inc.,* 305 F.3d 1283, 1284 (11th Cir.2002); *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991) (citing *Celotex,* 477 U.S. 317, 106 S.Ct. 2548; *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir. 1986); and Fed.R.Civ.P.56(e)). "The mere existence of a scintilla of evidence" supporting a party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Moreover, if it is the non movant who bears the burden of proof at trial, the moving party has two options. One is simply to show the court the absence of evidence supporting the non moving party's position without the need to negate the opponent's claim. *Fitzpatrick,* 2 F.3d at 1115–16 (quoting *Four Parcels,* 941 F.2d at 1437–38). In the alternative, the moving party may come forward with affirmative evidence showing that the non moving party would be unable to prove its case at trial. *Fitzpatrick,* 2 F.3d at 1116 (quoting *Four Parcels,* 941 F.2d at 1437–38).

Yet, even where the parties agree on the basic facts, but disagree on the inferences to be drawn from those facts, summary

---

14. The standard for summary judgment mirrors that required for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson v. Liberty Lob-* *by, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

judgment may still be inappropriate. *United States v. Twenty (20) Cashier's Checks*, 897 F.2d 1567, 1569 (11th Cir. 1990). The drawing of inferences from a non moving party's "specific facts" is permitted only if the inferences "are reasonable in view of other undisputed background or contextual facts and only if such inferences are permissible under the governing substantive law." *Mize v. Jefferson City. Board of Educ.*, 93 F.3d 739, 743 (11th Cir.1996). If reasonable minds could differ as to inferences arising from undisputed facts, then summary judgment should be denied. *Twenty Cashier's Checks*, 897 F.2d at 1569. If the record taken as a whole could not lead a rational trier of fact to find for the non movant, there does not exist a "genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bk. of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Finally, only evidence that can be reduced to an admissible form may be considered for summary judgment purposes. *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir.2005) (citing *Macuba v. Deboer*, 193 F.3d 1316, 1324–25 (11th Cir.1999)).

## III. *LEGAL DISCUSSION*

The primary issue in this case revolves around the question of standing and how far its parameters extend in an *in rem* forfeiture proceeding involving claims to Limited Liability Company ("LLC")-owned properties, by minority members of such LLCs; Specifically, whether minority interest holders in such LLCs have standing, by operation of law, or otherwise, to file claims to LLC-owned property, either on their own behalf, or on behalf of the LLCs of which they are minority members. As shall subsequently be made clear, however, because of the involved fact pattern that exists in this case and the multitude of issues raised, the Court is required to first address and resolve several threshold issues before disposition of this primary issue may be had. These threshold issues include the technical pleading requirements for filing a notice of claim in a forfeiture action under Rules G(8)(c)(i)(A) & (B) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), a determination regarding the identity of the entity or entities on whose behalf Bayhill's Claim has been filed, and the effect certain evidentiary rules on expert opinion and hearsay have on the evidence proffered by the Claimants. Then, after the primary issue of standing has been resolved, the Court must discuss the applicability of the doctrine of judicial estoppel, raised by Claimants as a means of side-stepping the requirements of standing and, in this way, defeating the Government's Motion.

By way of summary, the Government moves, pursuant to Supplemental Rule G(8)(c)(i)(B) for an order on the one hand, striking the Claims of Bayhill and Gannon collectively on the substantive basis of lack of standing [15], and, on the other hand, for an order striking the Claim of Bayhill only, on technical grounds, pursuant to Supplemental Rule G(8)(c)(i)(A), for the additional reason that Bayhill failed to "identify the claimant" in its Claim as required by Supplemental Rule G(5)(a)(i)(B) and failed to have its Claim signed by the "claimant" as required by Rule G(5)(a)(i)(C).[16] Alternatively, the Government moves for partial summary judgment in its favor and against

---

**15.** The Motion to strike the Claimants' claims as a substantive matter on the basis of lack of standing is authorized by Supplemental Rule G(8)(c)(i)(B), which provides the government with authority to move to strike a claim filed in a forfeiture action "because the claimant lacks standing." *Id.*

**16.** The Motion to Strike Bayhill's Claim on technical grounds is authorized by Supple-

the Claimants Gannon and Bayhill due to Claimants' alleged lack of standing to assert jurisdictionally sufficient interests in the Defendant Properties.

For ease of discussion the Court shall address the issues raised by the instant Motion as follows: (A) first, the Court shall address and resolve the issue of whether Bayhill's Claim satisfies the technical pleading requirements of Supplemental Rule G(5)(a)(i) and, in so doing, make a finding regarding the identity of the entity or entities on whose behalf the Claim has been filed; (B) next, the Court shall address the issue of standing and whether minority interest holders in LLCs have standing, by operation of law or otherwise, to file claims to LLC-owned property, either on their own behalf, or on behalf of the LLCs of which they are minority members; and (C), lastly, the Court shall discuss the Claimants' alternative argument that even if they do not have standing, they ought nonetheless be permitted an opportunity to file claims to the Defendant Properties pursuant to the doctrine of judicial estoppel.

### A. SUPPLEMENTAL RULE G(5)(a)(i)(B) & (C) [17]

■ 18 U.S.C. § 983 and the corresponding Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules") govern the instant forfeiture action. The law is well established that in order to

establish statutory standing in a forfeiture case, strict compliance with the Supplemental Rules is required. *United States v. $487,825 in U.S. Currency*, 484 F.3d 662, 664–65 (3d Cir.2007). *See also United States v. $39,557, More or Less, in U.S. Currency*, 683 F.Supp.2d 335, 338–40 (D.N.J.2010)(noting that forfeiture claimants must strictly adhere to "both the statutory and procedural requirements delineated in 18 U.S.C. § 983(a)(4)(A) and the corresponding Supplemental Rules ... specifically Rules G(5)(a)(i)(B) & (C)" in order to perfect standing).

■ The Government argues that Bayhill's Claim is deficient in that it fails to comply with Supplemental Rule G(5)(a)(i)(B) & (C) by failing to "identify the claimant" and by failing to have its Claim signed by "the claimant" as required by these Rules. Specifically, the Government argues that Bayhill's Claim should be stricken in that: (1) by improperly referring to two different entities as the Claimant, namely Bayhill Development, LLC and Bayhill Development, Inc., the Claim fails to "identify the claimant and state the claimant's interest in the property" as required by Rule G(5)(a)(i)(B); and, (2) by filing the Claim on behalf of Bayhill Development, LLC, an entity which was never created and does not legally exist, the Claim is not and can not possibly be signed by "the claimant" as required by Rule G(5)(a)(i)(C).[18]

mental Rule G(8)(c)(i)(A), which provides the government with authority to move to strike a claim filed in a forfeiture action "for failing to comply with Rule G(5) or (6)" *Id.* In turn, Supplemental Rule G(5)(a)(i)(A)-(C), raised by the Government herein as a basis to strike Bayhill's Claim, requires the claim in a forfeiture action: "identify the specific property claimed" (Rule G(5)(a)(i)(A)); "identify the claimant and state the claimant's interest in the property" (Rule G(8)(c)(i)(B)); and be signed by "the claimant" (Rule G(5)(a)(i)(C)).

**17.** In this section the Court addresses only the Government's Motion to strike Bayhill's claim on technical grounds pursuant to Supplemental Rule G(5)(a)(i). The Government's Motion to strike the claims of both Gannon and Bayhill pursuant to Supplemental Rule G(8)(c)(i)(B) as a substantive matter on the basis of lack of standing, shall be addressed subsequently herein in the section devoted to standing, section (B).

**18.** To the extent the objection here is to Bayhill's failure to submit its claim under oath as required, the Court will not further discuss

An off-shoot of these arguments is an assertion made by Bayhill that by its express language, its claim, in addition to being filed on its own behalf, has also been filed *on behalf of* the Buyer/Lessor, LLCs of which Bayhill is a member. The technical aspects of these arguments, i.e. what the Supplemental Rules require and the identity of the entity or entities on whose behalf the Claim has been filed, shall be addressed immediately below, while the related substantive issues raised regarding standing shall be addressed at a subsequent point in this report.

### (1) *The Technical Pleading Requirements Of Supplemental Rule G(5)(a)(i) As Applied To Bayhill's Claim*

■ The Government first contends that Bayhill's claim should be stricken in that by improperly referring to two different entities as the claimant, that is Bayhill Development, LLC and Bayhill Development, Inc., without specifying which one of them is the "real" claimant, results in no "claimant" having been identified, in violation of Rule G(5)(a)(i)(B). In support of its position, the Government cites to a string of cases, *United States v. $487,825 in U.S. Currency*, 484 F.3d 662, 664–65 (3d Cir. 2007), *United States v. $39,557, More or*

---

the issue for the reason that said defect has been cured. At DE 227, Rossi filed a Motion for Leave to Substitute Corrected Exhibit In Support of Opposition to Plaintiff's Motion to Strike Claims for Lack of Standing and/or For Partial Summary Judgment and attached an affidavit signed by Mr. Rossi which stated, among other things, that his failure to properly become a legal entity (Bayhill Inc.) was a result of a typographical error and that his participation in an attempted re-financing was not in an effort to participate in a fraud. Of particular significance, Rossi avers at numbered paragraph 15 that "[w]hen I filed the claim and Answer in this case, it was my intention to do so on behalf of Bayhill and on behalf of Westmore, Efficient (FL), and Efficient (PA), and to preserve my rights and protect my interests in all entities in which I have rights and interests with respect to Defendant 2 and to protect the rights and interests of these entities as well." By Order (DE 228) the Court granted Bayhill's motion and accepted the filling of Rossi's affidavit. For purposes of the instant Report, the undersigned construes said affidavit as having the effect of a properly signed and verified claim. The Court notes that along with allowing the late filed affidavit, the Court permitted the Government to file a Supplemental Reply which appears at DE 233. While the Plaintiff continued to object to the truthfulness of Rossi's assertions regarding the facts and circumstances surrounding the formation of Bayhill, Inc., the Government's position of importance to the Rule G(5) challenge was simply to say that the newly filed Rossi affidavit does not provide sufficient information for Bayhill Development, LLC to meet its burden of establishing its standing to contest the forfeiture in this case. A district court may require a claimant in a forfeiture proceeding to comply strictly with the Rule's requirement in presenting claims to the court, but the court has discretion in the matter due to the harshness of the penalty of forfeiture. In balancing the interest of the parties and the reasons for the delay in filing a timely claim, the Eleventh Circuit has recognized that where substantial injustice would otherwise result, the courts should exercise its discretion and permit a claim to be filed late. *United States v. $125,938.62*, 370 F.3d 1325 (11th Cir.2004). Likewise, courts have recognized that filing a sworn claim is essential, but that there are circumstances which permit a departure from a standard which would require that a claimant's verification accompany or be contained within the actual claim, and that the court's discretion should be exercised in the claimant's favor. *See United States v. United States Currency in the Amount of $294,600*, 1993 WL 416654 (E.D.N.Y. Sep. 28, 1993). Since both parties' position on the merits remain unchanged by virtue of the late signing of the affidavit in support of the claims, and under the circumstances where the Court finds that to strictly construe the filing requirements would result in an injustice, the Court construes Rossi's late filed affidavit as a timely filed, properly signed and verified claim.

*Less in U.S. Currency,* 683 F.Supp.2d 335, 338–40 (D.N.J.2010), and *United States v. Vehicle 2007 Mack 600 Dump Truck,* 680 F.Supp.2d 816, 822 (E.D.Mich.2010), for the general proposition that compliance with the Supplemental Rules "is no mere procedural technicality" and that verification of a claim is essential because of the substantial danger of false claims. While these general pronouncements of the law may be true, the cases cited by the Government do not in any way address the scenario at issue here and do not at all, either directly or indirectly, support the Government's position that a claim which refers to two alternate claimants runs afoul of Rule G(5)(a)(i)(B).

The Government states in its Memorandum of Law that it "needs to know with whom it is litigating otherwise the danger of false claims is likely and substantial." [19] In this instance, however, the Claimant is not hiding its identity. To the contrary, the Claimant is being candid when he notes that the Claim is being filed on behalf of both Bayhill Development, LLC and Bayhill Development, Inc., due to "typographical errors" in the forming of these entities. The Claim is then signed on behalf of both entities by Mr. Rossi, who is alleged to be the managing director of both entities. Moreover, to the extent compliance with Rule G(5)(a)(i)(B) requires the filing of two separate claims, same can be easily accomplished by amendment, which under normal circumstances, the Court freely grants.[20]

In short, the Government has cited no case law, and independent research has uncovered none, to support its position that a claim filed on behalf of two alternate claimants under the circumstances herein where confusion as to status is alleged to have been caused by "typographical errors," justifies striking the claim. In so ruling the Court has viewed the allegations in the Claim as true and has intentionally not gone beyond the facts alleged in the Claim to determine the legal status of the Claimants. To the extent the Government argues that neither Bayhill Development, LLC nor Bayhill Development, Inc. are proper party claimants in this case and, for that reason, the Claim filed on their behalf fails to "identify the claimant" and be signed by "the claimant", as required by Rules G(5)(a)(i)(B) and (C), said argument is rejected.[21] The Supplemental Rules set forth the technical requirements for filing a claim, and while compliance with the Supplemental Rules is required and should not be considered by the Court to be a "mere technicality," *United States v. $487,825 in U.S. Currency,* 484 F.3d at 664–65 (3d Cir.2007), whether a claimant is in fact a "legal" claimant with proper standing to bring the claim is an issue to be decided within the framework of substantive standing jurisprudence. To reach any other result would, to quote an old adage, be "placing the cart before the horse," by invalidating a claim on technical grounds based upon a substantive finding that has yet to be determined. In this regard the Court notes that whether Bay-

---

19. Government's Memo in Support of Mtn. (D.E. # 199), p. 19.

20. The Comments to Rule G(8) expressly provide that striking a claim must be considered together with the leniency accorded parties under the liberal amendment provisions of Fed.R.Civ.P. 15.

21. To the extent the same reasoning is employed to argue a substantive lack of standing,

either under Article III or statutorily under Supplemental Rule G(8)(c)(i)(B), which provides the government with authority to move to strike a claim filed in a forfeiture action "because the claimant lacks standing," the Court shall address same subsequently herein under the Standing section of the within Report.

hill Development, LLC or Bayhill Development, Inc. have *standing* to file the instant claim, whether on their own behalf or on behalf of the Buyer/Lessor, LLC's, is the primary issue in this case and will be addressed subsequently herein when the Court examines the issue of standing on a substantive basis.

■ The Government next argues that Bayhill's Claim should be stricken in that by filing the Claim on behalf of Bayhill Development, LLC, an entity which was never created and does not legally exist, the Claim is not and can not possibly be signed by "the claimant" as required by Rule G(5)(a)(i)(C). Once again, to find for the Government in this regard would be to invalidate the claim on technical grounds based upon a substantive finding that goes to the very heart of this case. The only case cited by the Government in support of its position is *Marrakush Society v. New Jersey State Police*, 2009 WL 2366132, *25 (D.N.J. July 30, 2009), which was not a forfeiture action and did not even refer to, let alone discuss, the technical requirements of Supplemental Rule G(5)(a)(i).

*Marrakush Society* is a case discussing a virtual plethora of issues involved in 19 consolidated cases filed by what the Court termed "recreational litigants" who filed actions "for sport," bringing mostly indefinable claims and alleging a "mix of obscure language, Latin legalese and distorted references to long superceded provisions." *Id.* at *12, *36. What *Marrakush* is cited for by the Government is a proposition of law so basic, no one could reasonably disagree, namely that "in order to be a litigant in legal proceedings, the litigant . . . must actually exist." *Id.* at *25. As *Marrakush* makes clear, however, this is a substantive standing

argument which should be approached jurisdictionally. Nowhere did Marrakush discuss the effect of Supplemental Rule G(5)(a)(i) or any other procedural rule for that matter, and the cases cited by *Marrakush* in support of its pronouncement, *Isaac v. Mount Sinai Hospital*, 3 Conn. App. 598, 490 A.2d 1024, *cert. denied*, 196 Conn. 807, 494 A.2d 904 (1985)("It is elemental that in order to *confer jurisdiction* on the court the plaintiff must have an actual legal existence, that is he or it must be a person in law or a legal entity with legal capacity to sue. [The plaintiff cannot be deemed existing if it] is neither a natural nor artificial person, but is merely a name.")(emphasis added), and *De Paul Community Health Center v. Trefts*, 688 S.W.2d 379 (Mo.Ct.App. 1985)(a non-existing "entity" has no *standing* to sue since it has no legally cognizable interest in "its" claims)(emphasis added), all frame the issue in terms of standing to sue as a jurisdictional prerequisite.

Thus, for the same reasons noted immediately above regarding the hesitancy to look beyond the factual allegations of a claim in ruling on a motion to strike pursuant to Supplemental Rule G(5)(a)(i), and the leniency accorded parties wishing to file amended claims, the Court finds the fact "the claimant" as identified in Bayhill's Claim may ultimately be determined by the Court not to have a valid claim or, by virtue of its status as a nonentity or otherwise, may be determined not to be a valid claimant, does not justify striking the Claim pursuant to Rule G(5)(a)(i)(C). This is especially true in this instance, where for reasons hereinafter explained, the Court finds summary judgment dismissing the Claims filed by both Claimants warranted on the substantive basis of standing.[22]

22. In this regard, the Court notes that because the undersigned finds that neither Claimant has standing, as a substantive matter, to file a claim on behalf of themselves to property belonging to the LLCs, it's unnecessary to address the Government's argument that Bayhill, LLC, since it wasn't properly

## (2) *The Identity Of The Entity Or Entities On Whose Behalf Bayhill's Claim Has Been Filed*

■ In seeming recognition of the difficulty it will have in establishing standing to file a claim against property owned by the Buyer/Lessor LLCs of which Bayhill is only a minority member, Bayhill argues in its Response that *on its face*, its Notice of Claim is filed not only on behalf of Bayhill, but is also filed on behalf of the three larger LLC's of which it is a minority member and in whose name title to the Properties is held. As such, Bayhill asserts its Claim represents a "direct action on behalf of the [three larger] LLC's." (See Bayhill's Resp. D.E. # 218, pp. 216, 220). Contrary to Bayhill's assertion, Bayhill's Claim does not "expressly" state that the three Buyer/Lessor LLC's are each making separate claims to the respective properties in which they have interests. The language Bayhill relies on for its assertion that the Claim is "expressly" made on behalf of the three larger LLC's of which it is a member, appears in footnote 1 of its Claim directly following the sentences referenced previously herein in footnote 7, *supra*, which state: "Bayhill Development LLC has at times been referred to interchangeably as Bayhill Development, Inc. as a function of typographical errors. This claim is made on behalf of both entities and the term 'Bayhill' is intended here to refer to both entities." (D.E. # 105, p. 1, fn 1). The language immediately following these sentences upon which Bayhill relies reads: "As the government is aware, Bayhill owns its ten percent interest in each of the properties through its membership in Westmore Properties, LLC, Efficient Realty & Development, LLC (FL), and Efficient Realty & Development (PA) and so Mr. Rossi makes this claim on behalf of Bayhill and those other entities in which Bayhill is a member to ten percent (10%) of the value of the underlying defendant properties identified herein and to ten percent (10%) of all monies held in escrow with respect to such properties identified herein." *Id.*

When all of the sentences of footnote 1 are considered together, along with the express allegations contained in the body of the Claim, it is clear that the only "claimant" expressly referred to is Bayhill, not the three Buyer/Lessor LLC's of which Bayhill is a part, and that the three Buyer/Lessor LLCs are mentioned only because they are the entities in which Bayhill, "through its membership" in them, makes its own Claim to. Further undermining Bayhill's assertion that its Claim is "expressly" filed on behalf of the three Buyer/Lessor LLCs of which it is a part, is the fact Bayhill's Claim seeks only "ten percent (10%) of the value of the underlying defendant properties and ten percent (10%) of all monies held in escrow ..." As the Government correctly observes, Bayhill's Claim to a mere 10% interest or value of the properties can only be understood to mean that Bayhill was claiming only that portion of the specific properties on its own behalf as the claimant, not the entirety of the Defendant Properties on behalf of the three Buyer/Lessor LLCs, as Bayhill now belatedly alleges. The Court notes that the within finding relates only

---

formed, is not a proper party claimant, or Bayhill's counter-argument that Bayhill LLC exists by virtue of estoppel or *de facto*. Nonetheless, the Court feels constrained to point out that while the undersigned previously accepted as true Rossi's explanation for failing to form the proper legal entities for purposes of the Supplemental Rule 5 G analysis, there is substantial evidence in this record that Rossi's attestation in his supporting statement under oath (DE 227–1) in support of the claim is lacking in credibility. The Government evidence adduced at the hearing on the instant motion would in all likelihood compel this court to make such finding if one were required.

to the *"express"* terms of the Claim filed on behalf of Bayhill and does not resolve the issue, discussed subsequently herein, of Bayhill's *authority* to file a claim on behalf of each of the three larger Buyer/Lessor LLCs of which it is a member.[23]

## B. *WHETHER CLAIMANTS HAVE STANDING TO FILE THEIR CLAIMS*

The Government challenges the Claimants' standing to file the claims in question on constitutional, prudential and statutory grounds. By way of summary, the Government argues that Claimants, as minority interest holders in the Buyer/Lessor LLCs, have neither an "ownership" nor "lesser possessory interest" in the property owned by the Buyer/Lessor, LLCs and, as such, are without Article III standing to file claims to the Defendant Properties, either on their own behalf, or on behalf of the Buyer/Lessor, LLCs. They argue further that Claimants, by virtue of their status as general unsecured creditors, are specifically excluded from the category of "owner" pursuant to 18 U.S.C. § 983(d)(6)(B)(i) and, therefore, fall outside the "zone of interests" protected against forfeiture. As a result, Claimants are alleged to lack statutory and prudential standing as well. While the Claimants, for their part, make a half-hearted attempt to combat the Government's argument that Claimants have no standing to file claims on their own behalf, their real focus is on attempting to re-cast their claims as ones filed on behalf of the Buyer/Lessor, LLCs. Essentially, Claimants contend that even if

the Court should find they lack standing to bring claims on behalf of themselves as minority members of the Buyer/Lessor, LLCs, Claimants have in essence, by either operation of law or by assignment, "stepped into the shoes" of the Buyer/Lessor, LLCs and may file claims directly on their behalf. In this way, Claimants assert they have sufficient standing. By way of framework, the Court shall begin its analysis with a discussion of standing in general terms and then move on to discuss the particular arguments and counter-arguments made by the Government and the Claimants as relates to Article III and statutory standing.

### (1) *Standing In General*

Standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir.2005)(quotation omitted). There are two aspects to standing jurisprudence: (1) Article III standing, which enforces the Constitution's "case or controversy" requirement, which is established by the moving party showing an "injury in fact"; and (2) "prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 11–12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004)(quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556

---

**23.** In this regard the Court notes that under normal circumstances and taking into account the liberal amendment provisions of Fed.R.Civ.P. 15, the Court would generally simply allow Bayhill to file an amended claim asserting a claim on behalf of the Buyer/Lessor, LLCs. as Bayhill has specifically requested by Motion to File Amended Verified Claim at DE 255. For reasons hereinafter explained, however, Bayhill's pending motion to

amend its Claim shall be denied by the Court as futile, *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)(noting that denial of a motion to amend is warranted where any further effort to replead would be futile), in light of the undersigned's finding herein that Bayhill is without authority to file a claim on behalf of the Buyer/Lessor, LLCs, either by resolution, assignment or by operation of law.

(1984)). While the Supreme Court has "not exhaustively defined the prudential dimensions of the standing doctrine," they have made clear that among the concepts encompassed within the prudential standing rubric is that which requires a plaintiff's complaint "fall within the zone of interests protected by the law invoked," otherwise referred to as statutory standing *Id.*

▅▅▅▅ In contesting a civil forfeiture action, the claimant is required to demonstrate standing under both Article III of the Constitution and under the statute governing its claim, in this case 18 U.S.C. § 983(d). *United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1543–44 (11th Cir.1987). As an *in rem* proceeding, a civil forfeiture action is unlike most other civil actions in that the defendant is the property subject to forfeiture and, as such, it is the claimant, not the plaintiff, who has the burden to demonstrate standing by a preponderance of the evidence[24] *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543 n. 11 (11th Cir.1987); Fed.R.Civ.P. Supp. R. G(8)(c)(B). As standing is a question of law, not of fact, the decision of whether standing exists is to be made by the court and not by the jury. *United States v. $543,190 in U.S. Currency*, 535 F.Supp.2d 1238, 1248 (M.D.Ala.2008) (citation omitted).

#### (2) *Whether Claimants Have Met Their Burden Of Showing Constitutional Standing*

▅▅▅▅ In a forfeiture action, the determination of whether a claimant has Article III standing turns upon whether the claimant has a sufficient interest in the property to create a "case or controversy";

sufficient interest in the property satisfies the "injury" requirement for purposes of standing. *United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538,1543 (11th Cir.1987). To demonstrate a "case or controversy" sufficient for purposes of Article III standing in the forfeiture context, a claimant must demonstrate either an ownership or lesser possessory interest in the property. *Via Mat Int'l South America Ltd. v. United States*, 446 F.3d 1258, 1262–63 (11th Cir.2006)(noting that while ownership of property that has been seized can be evidence of the existence of an injury that is direct enough to confer standing, ownership is not required; "[N]on-owners, such as bailees or those with possessory interests, can also have injuries resulting from the seizure of property that are sufficient to establish standing."). To evaluate a particular ownership interest, the Court is required to engage in a two-step process in which it looks to state law to determine what interest the claimant has in the property to be forfeited, but looks to federal law to determine whether the particular interest is forfeitable under the relevant statute. *See United States v. One 1990 Beechcraft 1900 C Twin Engine Turbo–Prop Aircraft*, 659 F.Supp.2d 1260, 1267 (S.D.Fla.2009)(state law determines ownership interest for purposes of 18 U.S.C. § 983(d)(6)(A), but exceptions listed in § 983(d)(6)(B) are determined independent of state law) (citations omitted); *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir.2007)("While state law defines the property interests a defendant has, federal law determines whether those property interests are forfeitable in the commission of a federal crime."); *See also United States v. Lot 5, Fox Grove, Alachua County, Florida*, 23 F.3d 359, 361

---

**24.** Preponderance of the evidence is proof that persuades the trier of fact that a proposition is more likely true than untrue. *Bourjaily v. United States*, 483 U.S. 171, 175, 107

S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Deleveaux*, 205 F.3d 1292, 1296 (11th Cir.2000); *Multitex Corp. of Am. v. Dickinson*, 683 F.2d 1325, 1330 (11th Cir.1982).

(11th Cir.1994) (explaining that federal statute governing civil forfeiture supersedes Florida state homestead law when congressional purpose clearly and wholly expressed).

### (a) Article III Standing Applied To The Claims Filed By Claimants On Their Own Behalf

■ As stated previously, the Court views the Claims filed by Gannon and Bayhill to be claims filed on their own behalf, asserting indirect interests in the Defendant Properties through their minority interests in the Buyer/Lessor LLCs. The Government argues that as mere minority-interest members of the Buyer/Lessor LLCs, Claimants lack Article III standing to assert in their in individual capacities, rights belonging to the LLC as an entity. In support of their position, the Government likens members of LLCs to stockholders of corporations and argues that just as shareholders lack standing to contest the forfeiture of corporate assets, LLC members lack standing to contest the forfeiture of assets owned by an LLC. *See United States v. New Silver Palace Restaurant, Inc.,* 810 F.Supp. 440 (E.D.N.Y.1992)(noting that since shareholder claimants were neither owners nor lienholders with respect to corporate assets, they had no standing to file a claim in a forfeiture proceeding; "shareholders do not hold legal title to any of the corporation's assets. Instead the corporation— the entity itself—is vested with the title" and "shareholders have an equity interest in the corporation, but do not possess a lien against corporate assets."); *United States v. Real Property Known as 479 Tamarind Drive,* 2005 WL 2649001 (S.D.N.Y. Oct. 14, 2005)(unpublished)(holding that shareholders of Canadian corporation lacked standing to contest forfeiture of corporate assets),

The concept that a shareholder of a corporation has no Article III standing to corporate assets in a forfeiture proceeding is perhaps best explained in *United States v. Real Property Associated with First Beneficial Mortgage Corp.,* 2009 WL 1035233 (W.D.N.C. April 16, 2009)(unpublished), which involved an individual claim by the president and sole shareholder of a corporation to corporate-owned properties in a civil forfeiture proceeding. In finding that the corporate president had no personal ownership interests in the property owned by the corporation, and thus no Article III standing to challenge the forfeiture, the Court noted as follows:

> It has been held that the sort of property interest giving rise to standing should be "broadly interpreted to include [that held by] any person with a recognizable legal or equitable interest in the property seized." That ownership interest, however, must be in the *specific* property being forfeited. A shareholder in a corporation has no legal title to the assets of a corporation, but has a form of equitable interest therein. That interest, however, is not in any *specific* asset or assets of the corporation, but rather in the general holdings of the corporation. This is illustrated by the fact that a judgment against the shareholder can be satisfied by levy upon his shares in the corporation, but not upon the assets owned by the corporation. Because of this lack of ownership interest in the specific property, it has been held in each of the cases deciding the issue that a shareholder in a corporation does not have Article III standing to contest the forfeiture of corporate property.

*Id.* at *3 (internal citations omitted). *See also Cruising World, Inc. v. Westermeyer,* 351 So.2d 371, 373 (Fla. 2d DCA 1977)(noting that under Florida law "shares of stock are personal property .... even where the property of a corporation consists wholly or chiefly of real estate" and therefore shares of stock do not constitute ownership of corporate as-

sets), *cert. denied,* 361 So.2d 836 (1978); *Damico v. State,* 153 Fla. 850, 16 So.2d 43 (1944)(noting that a share of stock represents a proportionate interest in the property of the corporation, "but does not vest the owner thereof with any legal right or title to any of the property, his interest in the corporate property being of an equitable or beneficial nature.").[25]

Florida Statutory law on LLCs is consistent with the Government's position that a member of an LLC lacks standing to file a claim "through its membership" in an LLC. Thus, Chapter 608 of the Florida Statutes, governing LLCs, provides that: a member of an LLC is not a proper party to proceedings by an LLC, Fla. Stat. § 608.462; a member of an LLC has no interest in property acquired by an LLC, which is instead property of the company, Fla. Stat. § 608.425; and, a member of an LLC owns as his own personal property only this interest in the LLC itself. Fla. Stat. § 608.431.[26]

While the Government has cited no Florida case law in the forfeiture context and independent research has uncovered none likening the members of a corporation to a corporation's stockholders, upon independent research the Court has uncovered a recent case, decided just weeks ago, in which the Supreme Court of Florida, in a post-judgment enforcement action, analogized an ownership interest in an LLC to shares of stock in a corporation. *Olmstead v. F.T.C.,* 44 So.3d 76, 80–81 (Fla. 2010). Before the Court in *Olmstead* was a certified question from the Eleventh Circuit concerning the right of a judgment creditor (the FTC) to enforce a judgment entered against a single-member LLC, judgment debtor, which ordered the judgment debtor to surrender all right, title and interest in the debtor's single-member LLC to satisfy the FTC's outstanding judgment. In answering the certified question in the affirmative, the Supreme Court noted that "[a]n LLC is a type of corporate entity, and an ownership interest in an LLC is personal property that is reasonably understood to fall within the scope of 'corporate stock.'" *Id.* at 80. In so ruling the Court rejected the LLC members' contention that the charging provision in the statute governing Florida LLCs, Fla. Stat. § 608.433(4), which serves to limit a creditor's rights, established the exclusive remedy available to a judgment debtor, concluding instead that a judgment creditor was entitled to "the full

---

**25.** *See also Orgain v. City of Salisbury,* 521 F.Supp.2d 465, 476 n. 33 (D.Md.2007)(noting that "[s]hareholders (or in the case of an LLC, its members)do not have standing to sue on the corporation's behalf."); *Brownstone Investment Group, LLC v. Levey,* 468 F.Supp.2d 654, 662 (S.D.N.Y.2007)(noting that member of LLC did not have standing to bring breach of fiduciary claims against fellow members, where member did not allege any injury to himself that was separate and distinct from that to the company).

**26.** The Court observes that Pennsylvania and Illinois, the two states where, along with Florida, the Defendant Properties are located, likewise have statutes governing LLCs. The LLC provisions in those states are similar to those in Florida and essentially provide that a member of an LLC has no interest in the specific property of the LLC and, therefore, has no standing to bring an action in its own behalf asserting a clam to LLC-owned property. *See* 15 Pa.C.S.A. § 8991(b) ("A member of a company is not a proper party to an action or proceeding by or against the company, except where the object is to enforce the right of a member against or his liability to the company."); 15 Pa.C.S.A. § 8923 ("Property transferred to or otherwise acquired by a limited liability company becomes property of the company. A member has no interest in specific property of a company."); Chapter 805 ILCS 180/30–1 (providing that an LLC member is not a co-owner of, and has no transferable interest in, the property of a limited liability company and that the interest an LLC member has in LLC property is in the nature of a personal property interest).

scope of a judgment creditor's rights with respect to a judgment debtor's freely alienable membership interest in a single-member LLC." *Id.* at 83.

*Olmstead* effectively refutes the *only* rebuttal to the Government's position, that as mere minority-interest members of the Buyer/Lessor LLCs, Claimants lack Article III standing to assert in their in individual capacities, rights belonging to the LLC as an entity. In response to the above reasoning and case law cited by the Government, Claimants do no more than repeat in various forms and without any accompanying reasoning or support, the bald-faced pronouncement that they have standing to bring the subject claims on their own behalf. Not only do the Claimants fail to cite *even one* case in support of their position, they don't even bother to distinguish the cases cited by the Government to the contrary.[27] The closest Claimants get to engaging in any reasoning on the issue is when, in a footnote on page 17 of their Response (D.E. # 218), Claimants take issue with the Government's analogizing LLC members' rights to the rights of corporate shareholders, contending the "analogies are faulty to the point of being meaningless, both generally and, specifically here because of the extraordinary events that have affected the membership of the relevant LLC's here." *Id.* As a preliminary matter, by failing to explain exactly what is meant by these "extraordinary events," which have so "affected the

[LLC] membership," or how these events relate to standing, Claimants' argument is woefully inadequate for purposes of fulfilling their burden of demonstrating standing by a preponderance of the evidence. *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543 n. 11 (11th Cir.1987). Further, and more importantly, in light of the statutory law governing LLCs and the recent ruling by the Supreme Court in *Olmstead* which likens members of LLCs to stockholder's of a corporation, Claimants' position is just plain wrong.

In conclusion, the Court agrees with the Government that the LLC member Claimants in this case, like their stockholder counterparts, simply hold a proportionate interest in the Defendant Properties owned by the Buyer/Lessor, LLCs, which is equitable in nature. While it's generally recognized that the sort of property interest giving rise to standing is "broadly interpreted to include [that held by] any person with a recognizable legal or equitable interest in the property seized," *see United States v. Real Property Associated with First Beneficial Mortgage Corp.*, 2009 WL 1035233, *3, "[t]hat ownership interest, however, must be in the *specific* property being forfeited." *Id.* Here the Claimants' equitable interests, deriving as they do from their status as LLC members, runs not to any *specific* assets or *res* of the Buyer/Lessor LLCs, but rather runs to the Buyer/Lessor LLC's "general hold-

---

**27.** To be fair, while it's true the Claimants failed to cite to even one case in their pleadings on this issue, they did refer to a case at the May 17, 2010 hearing on the matter.(Hr'g Tr. at 32, ll. 14–25; at 33, ll. 1–25; at 34, ll. 1–2.) The case they referred to, however, *In re Berris*, 2009 WL 1139085 (S.D.Fla. Apr. 27, 2009), is distinguishable from the instant case and provides Claimants no refuge. In *In re: Berris*, the court found that it had jurisdiction over a contracting promoter's claim to a portion of deposit monies contained within a bankruptcy estate because the promoter had a

direct ownership interest in the deposit money as a result of having personally contributed to it. 2009 WL 1139085, at *4. The instant case stands on an entirely different footing. The Claimants in *In re Berris*, unlike the Claimants in this instant case, had a direct ownership interest in the *res* by virtue of their proven contribution to it. The fact pattern here is far different where neither Gannon nor Bayhill has any direct interest in the *res*, but simply an interest in the LLCs who in turn have an interest in the *res*.

ings." *Id.* As such, just as shareholders in a corporation do not have Article III standing to contest the forfeiture of corporate property, the LLC minority-member Claimants in this case likewise have no Article III standing to contest the forfeiture of the Defendant Properties owned by the Buyer/Lessor LLCs. *Id.*

(b) *The Attempt By Claimants To Establish Article III Standing By Re-Casting Their Claims As Claims On Behalf Of The Buyer/Lessor LLCs*

■ Recognizing the obvious uphill battle they face in overcoming the Government's contention that a member of an LLC does not have standing to file a claim on its own behalf to LLC-owned property, Claimants have attempted to re-cast their claims as claims filed on behalf of the subject LLCs themselves. Their authority to file claims on behalf of the Buyer/Lessor, LLCs is argued to arise both by operation of law and by formal resolution. Thus, Claimants first contend that Gannon and Bayhill, "as the only remaining members of the LLCs that own the properties, have the authority and right, to file a Claim on behalf of the LLCs." [28] In other words, Claimants contend that as a result of the criminal forfeiture action in which 80.1 % of the ownership interests in the Buyer/Lessor, LLCs was forfeited, Gan-

non and Bayhill, by operation of law, succeeded to the interests of the forfeited Buyer/Lessor, LLCs,[29] and may file claims to the Defendant Properties on the Buyer/Lessor, LLCs' behalf. Claimants second argument is similar, except that rather than relying solely on the "operation of law" principle referred to above, Claimants bolster their argument by relying on an alleged formal resolution adopted by Gannon and Bayhill on an unidentified date, some time after the conclusion of the criminal forfeiture action.

■ Turning first to Claimants' "operation of law" argument, Claimants fail to cite any case law in support of their position and independent research conducted by the Court has been unsuccessful in locating any to support Claimants' contention that upon the criminal forfeiture, they "automatically" succeeded to the interests of the forfeited majority member LLCs and, as if by magic, were somehow bestowed standing to file claims on their behalf. While Claimants do cite various provisions of Florida's LLC Act in support of their position, their meandering march through the Act and "leap of logic" transitions from one provision to the next, all unsupported by any authority in support, appears calculated more to confuse the Court than to enlighten it.[30]

---

**28.** Claimant's Resp. (D.E. # 218), p. 18.

**29.** In restating the Claimants' argument, the Court has used the term "[S]ucceeded to the interests of" the forfeited Buyer/Lessor, LLCs, in a limited sense to refer only to the authority to act, and does not mean to imply that the Claimants have asserted an interest in the LLCs that is any greater than the percentage interest they originally obtained.

**30.** The only "support" arguably offered by Claimants to add weight to their position is the declaration of Ms. Banoff, an expert witness who has graced the Court with her opinion as to how Florida LLC law operates. *See* Banoff Dec. (D.E. # 249–2). This declaration,

however, which is based on neither personal observation nor on scientific, technical, or other specialized data and support is inadmissible. As the Government correctly observes, Ms. Banoff cites only her "experience" as the basis for her opinion, without citing to any hard facts, data or statistics. Such opinion evidence unconnected to existing data and/or personal observation by an expert amounts to nothing more than an unsupported assertion and should not be considered by the Court. *See Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1245 (11th Cir.2009)(noting that "[n]othing in the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the ex-

Claimants begin with the shaky premise that "[t]he inquiry must first focus on what it is the Plaintiff [here read Government] received when it obtained the Final Order of Forfeiture in the related criminal case." [31] In answer to this question, Claimants contend that inasmuch as Fla. Stat. § 608.431 defines a member's interest in an LLC as "personal" property, "all the [Government] received, if anything, was the personal property interest of such members, making [the Government] perhaps a simple creditor." [32] From here, Claimants contend that Fla. Stat. § 608.432 "*must* be the next point of reference, for the effect of the forfeiture would be considered an involuntary assignment of the [criminal] defendants' interests." [33]

According to Claimants, the effect of this "involuntary assignment" is two-fold: on the one hand, the involuntary assignment "removes all rights and powers of the previous member upon the assignment, or here, upon the entry of the Final Order of Forfeiture under § 608.432(2)(c)" [34]; and, on the other hand, the "involuntary assignment" gives the Government only the "personal" property of the defendants while specifically excluding from the Government any "rights or interests of membership and ... governance authority with respect to the four LLCs." [35] Claimants then proceed to wrap-up their argument by concluding, this time *without any* citation to an LLC–Act provision, that "[t]he only remaining members of these four LLCs are Bayhill and Gannon and only those two members can act on behalf of the LLCs to file a claim or to engage in any act of governance on behalf of the LLCs and as their agents." [36]

The sheer arrogance of Claimants' position is exceeded only by the paucity of reasoning and legal authority to support it. The entirety of Claimants' argument on this point rests on broadly stated pronouncements of what the law provides under the facts presented, unaccompanied by any case support or other legal authority to substantiate these claims. It's as if the Court is expected to simply take Claimants at their word. Thus, although the Florida Statute governing LLCs is far from clear on the matter, when Claimants simply assert, with no authority, that the Final Order of Forfeiture in the criminal case transformed the Government into "perhaps a simple creditor" and resulted in an "involuntary assignment," the Court is to assume that to be the case. Likewise,

---

pert.")(quotation omitted). Ms. Banoff's Declaration is rendered even more extraneous and improper in this instance where the issue upon which Ms. Banoff opines, namely, whether or not Claimants have standing, is an issue of law for the Court to decide. *See Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir.1990)(noting that an expert witness cannot testify regarding ultimate legal conclusions nor on the legal implications of conduct). The declaration is improper and inadmissible for the additional reason that by waiting until after the May 17th hearing to submit same, Claimants effectively denied the Government the opportunity to cross-examine Banoff. Finally, even if the Declaration were deemed admissible, inasmuch as it does nothing more than express Ms. Banoff's "opinion" as to a legal conclusion which is the judge's alone to decide, the Declaration is of no moment and offers Claimants no assistance in connection with their obligation to demonstrate standing in this case by a preponderance of the evidence. For all of these reasons the Court deems Ms. Banoff's Declaration inadmissible and shall not consider same herein.

31. Claimants' Response (D.E. # 218), p. 18.

32. *Id.*

33. *Id.* (emphasis added)

34. *Id.* at pp. 18–19.

35. *Id.*

36. *Id.*

when Claimants blithely announce, unsupported this time with not only case support *but a relevant statutory provision as well,* that the effect of the "involuntary assignment" was to "automatically" confer on Claimants the authority to manage the affairs of the subject LLCs and standing to file claims on their behalf, the Court is once again assumed to unquestionably accept this as truth. Claimants would do well to remember that the burden in this case to show standing is on them. In this regard, the burden is a heavy one, requiring Claimants to show standing by a preponderance of the evidence. *United States v. $38,000.00 in U.S. Currency,* 816 F.2d at 1543 n. 11. Unsubstantiated legal conclusions, whether parroted by a party or by an expert, cannot, as a matter of law, create the genuine issues necessary to defeat summary judgment. *Id.*

Claimants fare no better with their "formal resolution" argument. As a preliminary matter, the success of this argument depends upon the Court accepting the Claimants' previous argument, just rejected, that the authority to manage the affairs of the subject LLCs passed "automatically" to Claimants upon the criminal forfeiture. For it is at an unspecified time at this point, after the criminal forfeiture and the alleged "automatic" transfer of authority to the Claimants, that Claimants are alleged to have voted on and agreed to "dissolve" the Buyer/Lessor, LLCs, appoint themselves managing members to

"wind up" the business, and confer on themselves standing to file claims on the LLCs' behalf. For obvious reasons, this argument, premised as it is upon a position already rejected, is at the outset doomed to failure.[37]

The argument is also unavailing in that it fails to take into account Fla. Stat. § 608.4431, which expressly provides that a "dissolved limited liability company continues its existence" for purposes of winding up its affairs and that "dissolution of a limited liability company does not: (a) transfer title to the limited liability company assets .... [or] (d) terminate the authority of the registered agent of the limited liability company." *Id.* This provision is contrary to the position of Claimants that dissolution of the forfeited interests of the larger LLCs, allowed Claimants to step into the void created, vote to change managing director and registered agent positions, and confer standing.

 Finally, even if the argument had any merit on a substantive basis, the argument would nonetheless fail as an evidentiary matter. The argument itself relies on the declaration of Bayhill's attorney in this action, Mr. Schoen (the "Schoen Declaration"), in which Mr. Schoen, as the witness, attempts to show through hearsay that the Claimants "as the only remaining members," of the Buyer/Owner, LLCs, voted and agreed to serve as the LLCs' agents to file the claims at issue. (D.E.

**37.** Taking to heart the old adage of there being "more than one way to skin a cat," Claimants argue as an alternative to dissolution by resolution, dissolution by operation of law. For this argument Claimants rely on Exhibit "C" attached to Claimants' Supplemental Briefing (D.E. # 249), which is a document from the website *www.sunbiz.org* reflecting that on September 25, 2009, the LLCs, Efficient (Fla.) and Westmore, were administratively dissolved for failure to file their 2009 annual report. It is unclear whether this "administrative dissolution" which can be cured by the simple filing of the report and payment of the annual filing fee, is of the same effect as a formal dissolution agreed to by the members. The Government argues it is not. Given that it is the Claimants' burden to demonstrate standing by a preponderance of the evidence and Claimants have failed to cite any authority in support of their position, the Court declines Claimants' invitation to view the administrative action dissolving the LLCs as equal in effect to a formal dissolution agreed to by the LLC's members,

# 249 at 5; D.E. # 249–2 at 2, ¶ 3.) No date is provided as to when this action allegedly took place, nor is any supporting documentation offered into evidence to prove the existence of the alleged resolutions voted upon. More importantly, the "declarant" stating that the vote took place and describing the actions taken is not alleged to have been present at the vote and, therefore, cannot speak from personal knowledge, but only from what Claimants told him. This, of course, is the purest form of inadmissible hearsay. FED.R.EVID. 801(c); *Equity Lifestyle Properties, Inc. v. Florida Mowing and Landscape Serv., Inc.,* 556 F.3d 1232, 1243 (11th Cir.2009)(noting that hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," and reaffirming the general rule that absent an applicable exception, hearsay evidence is inadmissible). *See also United States Steel, LLC v. Tieco, Inc.,* 261 F.3d 1275, 1287 (11th Cir.2001)(explaining that hearsay is disfavored because it is not subject to an oath or to the rigors of cross-examination) (citations omitted).

For all of the foregoing reasons, the Court finds that whether by "operation of law" or by formal resolution, Claimants have failed to satisfy their burden of showing, by a preponderance of the evidence, that they have standing to file claims on behalf of the Buyer/Lessor, LLCs to properties owned by such LLCs.

### (3) *Whether Claimants Have Met Their Burden Of Showing Statutory Standing*

■ Article III standing aside, Claimants must also establish statutory standing, which in the instant forfeiture context requires Claimants demonstrate they fall within the definition of "owners" under 18 U.S.C. § 983(d), and therefore are properly encompassed within the "zone of interests protected by the law invoked." *United States v. $38,000,* 816 F.2d at 1543–45 (noting that a claimant in a civil forfeiture case must establish, as a threshold issue, both Article III standing and statutory standing under the statute governing its claim); *United States v. 74.05 Acres of Land,* 428 F.Supp.2d 57, 61 (D.Conn.2006)(noting that although claimant had Article III standing, he failed to establish statutory standing under 18 U.S.C. § 983(d)(1) because he did not have an ownership interest as defined in the statute). Section 983(d)(a) of the Civil Forfeiture Asset Reform Act of 2000 ("CAFRA") defines "owner" as "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest" *Id.* Specifically excluded from the definition of "owner" is, among other individuals, "a person with only a general unsecured interest in, or claim against, the property or estate of another." § 983(d)(a)(B)(i). While " '[c]ourts generally examine state law to determine whether a person has a valid ownership interest pursuant to § 983(d)(6)(A), … [t]he exceptions in § 983(d)(6)(B) must be considered independent of state law.' " *U.S. v. One 1990 Beechcraft 1900 C Twin Engine Turbo–Prop Aircraft,* 659 F.Supp.2d 1260 (S.D.Fla.2009)(*quoting United States v. Real Property Known as 1866 Center Road, Wilmington,* 2008 WL 906061, at *3 (S.D.Ohio Mar. 31, 2008)(internal citations omitted)).

■ To evaluate the statutory standing requirement at issue here, "we must identify what interest the litigant seeks to assert and then decide if that interest is arguably within the zone of interests to be protected or regulated by the statute." *Bonds v. Tandy,* 457 F.3d 409, 413–14 (5th Cir.2006). The property interests at issue

here consist of four LLCs created in three different states, Florida, Pennsylvania and Illinois. Record title to the four LLCs is in the name of the respective Buyer/Lessor LLCs,[38] and record searches conducted in the counties where the properties are located reveal that while the Buyer/Lessor LLCs and the subject mortgagees have recorded documents identifying their legal interests in the Defendant Properties, Claimants have not.[39] As a result Claimants have not and can not reasonably allege a direct ownership interest in the Defendant Properties. Instead, at most, Claimants have alleged only an indirect interest in the Defendant Properties through their minority interests in the Buyer/Lessor LLCs.[40] These interests are by their very nature general and unsecured and, as this category of interest has been specifically excluded from the definition of "owner" by CAFRA, can not provide a basis for statutory standing. *United States v. Watkins,* 320 F.3d 1279, 1282–84 (11th Cir.2003)(noting that unsecured or general creditors lack standing to contest forfeitures); *United States v. One–Sixth Share,* 326 F.3d 36, 43–44 (1st Cir.2003)(holding that individual with in personam judgment against property owner has no secured interest in any particular asset, and therefore is not an owner for purposes of establishing § 983(d) standing); *United States v. McCorkle,* 143 F.Supp.2d 1311, 1322–23 (M.D.Fla.2001)(judgment creditor who did not reduce judgment to lien on specific asset was simply an unsecured creditor);

*United States v. $26,620 in U.S. Currency,* 2006 WL 949938, *5–7 (N.D.Ga. April 12, 2006)(unpublished)(noting that claimant failed to establish statutory standing under 18 U.S.C. § 983(d)(1) because, as an unsecured creditor under § 983(d)(6)(B)(i), he was not an owner); *United States v. $38,852 in U.S. Currency,* 328 F.Supp.2d 768, 769 (N.D.Ohio 2004)(unsecured creditor under § 983(d)(6) was not an "owner" and lacked standing).

To the extent Claimants argue their status as the beneficiaries of a "valid assignment of an ownership interest" places them squarely within the definition of "owners" as defined by § 983(d)(a) and, as such, confers standing upon them, irregardless of whether their interests are unsecured and therefore excluded by § 983(d)(6), said argument is rejected. As a preliminary matter, the Court has already determined there to have been no valid assignment of an ownership interest to Claimants, whether by operation of law or by resolution, so as to confer Article III standing. This same analysis applies with equal measure here to effect the same result in the statutory context.

■ Claimants are also precluded from establishing statutory standing by reliance on Florida LLC Law and/or a general appeal to equity, in that the specific federal forfeiture statute preempts general principles of common law concerning the legal rights of LLC members as well as

---

38. *See* Exhibits "1–4," attached to the Government's Memo of Law in Support (D.E. # 199).

39. *Id.* Exhibits "15–18."

40. The term "unsecured creditor" is defined in Black's Law Dictionary (8th Ed. 2004, p. 397) as "[a] creditor who, upon giving credit, takes no right against specific property of the debtor." *Id.* The term "secured creditor," is

defined in Black's Law Dictionary on the same page, as "[a] creditor who has the right, on the debtor's default, to proceed against collateral and apply it to the payment of a debt. UCC § 9–102(a)(72)." *Id.* Nowhere in any of Claimants' pleadings nor at anytime during the hearing have Claimants ever taken the position, at least insofar as the Claims filed on behalf of themselves, that they were anything other than unsecured creditors.

any state law establishing equitable property rights. *See U.S. v. One Hundred Sixty–Five Thousand Five Hundred Eighty Dollars ($165,580),* 502 F.Supp.2d 114, 122–123 (D.Me.,2006)(rejecting Claimants' reliance on Maine common law to satisfy the definition of § 983 "owner" and confer statutory standing on basis that federal forfeiture statute which excluded from definition of "owner" those with general unsecured interests, pre-empted general principles of common law concerning the legal rights of those who find property); *U.S. v. 74.05 Acres of Land,* 428 F.Supp.2d 57, 63–66 (D.Conn.2006) (and the reasoning stated therein)(while equitable title to property was deemed to be a sufficient ownership interest to satisfy the "facially-colorable-interest" requirement for Article III standing in a forfeiture action, the same interest was deemed insufficient to confer statutory standing for purposes of § 983(d)(a), which excluded from the definition of "owner" those with unsecured interests; in so ruling the Court, guided by "[a] brief history of the innocent owner defense" and upon careful review of CAFRA's history and underlying policies, found that Congress intended the innocent owner defense to be narrowly applied to *only* those "owners" defined in the statute and not specifically excluded).

In short, based upon the above and foregoing, the Court finds that Claimants have failed to fulfill their burden of showing, by a preponderance of the evidence, that they have statutory standing to file claims, whether on behalf of themselves or on behalf of the Buyer/Lessor, LLCs, to properties owned by such LLCs.

## C. *WHETHER CLAIMANTS MAY INVOKE THE DOCTRINE OF JUDICIAL ESTOPPEL TO AVOID STANDING*

 Claimants seek to avoid the strict application of standing requirements by asserting that the Government is now taking positions inconsistent with, and directly contrary to, earlier positions taken on these same issues in the prior related criminal proceedings, and in the early stages of this civil forfeiture case. Based upon this assertion, Claimants urge the Court to apply principles of judicial estoppel as a means of excusing them from meeting their obligation to adequately plead and establish standing. Specifically, Claimants point to the underlying criminal proceedings before Judge Middlebrooks in which the Government obtained orders forfeiting the criminal defendants' interests in the Defendant Properties, based on what the Claimant alleges was sworn testimony provided under oath by the Government in that case that the criminal defendants, individually and in their capacity as LLCs, held ownership interests in the Defendant Properties. On a different front, Claimants aver that in the instant civil case, Plaintiff initially sought only to forfeit Gannon's interest in the Defendant Properties and when a claim was filed individually by Gannon, the Government sought dismissal on the basis that only Gannon's LLC could file a claim. In a related challenge, Claimants point out that the Government obtained a default judgment against Thomas Rossi, individually, and Bayhill Development, LLC, because they had notice of the action and did not file a claim asserting their interests in the Defendant Properties.[41] It is the Claim-

---

41. Although this particular argument is focused, in its application, to the entry of clerk's defaults against Thomas Rossi and Bayhill Development, LLC, Gannon purports to ride along by virtue of his being permitted to adopt Claimant, Bayhill's Response to Plaintiff's Motion to Strike Claims for Lack of Standing and/or for Partial Summary Judgment. (DE 215, 217).

ants' position that because the Government filed an affidavit in support of default in this civil case (DE 65–2) averring that Rossi was an alleged owner of Bayhill Development, LLC which had acquired a 10% interest in the first three real properties listed in the Complaint and had failed to file a claim, answer or defend, such was a recognition that Bayhill, LLC, indeed, has an ownership interest as defined in § 983.

 Judicial estoppel is an equitable doctrine, invoked at the discretion of the court, and aimed at preventing "the perversion of the judicial process" by prohibiting the "parties from changing positions according to the exigencies of the moment." *Robinson v. Tyson Foods, Inc.,* 595 F.3d 1269, 1273 (11th Cir.2010)(quoting *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). Under the doctrine, "a party is precluded from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Ajaka v. Brooksamerica Mortgage Corp.,* 453 F.3d 1339, 1343–44 (11th Cir.2006)(quoting *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir.2002)(quoting 18 James Wm. Moore et al, Moore's Federal Practice § 134.30 at 134–62 (3d ed. 2000) & citing *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001))).

In *New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) the United States Supreme Court, while recognizing that the circumstances under which judicial estoppel may appropriately be invoked can not be reduced to a single set of hard-and-fast rules, nonetheless identified three factors that should inform a court's decision whether or not to apply the doctrine in a given instance: "(1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was mislead and; (3) whether the party advancing the inconsistent position would derive an unfair advantage."[42] *Robinson,* 595 F.3d at 1273 (citing *New Hampshire v. Maine,* 532 U.S. at 750–51, 121 S.Ct. 1808). In the Eleventh Circuit two additional factors have been deemed to be of primary consideration: "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Robinson,* 595 F.3d at 1273 (quoting *Burnes,* 291 F.3d at 1285). While Intent for purposes of judicial estoppel requires "intentional contradictions, not simple error or inadvertence," *Burnes,* 291 F.3d at 1285, the Eleventh Circuit has held that "such intent may be inferred from the record." *Id.* at 1285–1286.

Claimants contend that the Government in the related criminal case, through their agents, sought and obtained orders of forfeiture concerning interests in the same Defendant Properties at issue in this action by arguing that each individual criminal defendant held an ownership interest *directly* (emphasis added) in the underlying properties. This, Claimants assert, is completely inconsistent with and in direct contradiction to the Government's position in this action, which is that neither the

---

**42.** The Supreme Court explained that its list of factors was "by no means exhaustive," explaining that "[i]n enumerating [the three factors], we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine,* 532 U.S. at 750–51, 121 S.Ct. 1808.

individual Claimants nor their LLCs, have any direct ownership interest in the underlying Defendant Properties. As such, the Government concludes that these Claimants do not have standing.

In this attack, Claimants gloss over the additional requirement engrafted onto the Supreme Court's judicial estoppel standard by the Eleventh Circuit necessitating that the inconsistent statement be made under oath. *Burnes*, 291 F.3d at 1285–86. Rather, Claimants broadly aver with no direct record citation to the criminal transcript or proceedings, that the Government made such representations that were tantamount to an assertion that there was an individual interest or ownership interest as would be defined under § 983. That is to say, the fact that there may have been a statement by a federal agent somewhere in the criminal trial about the individual criminal defendants' ownership interest in the Defendant Properties, such cannot be said to constitute *per se* an assertion by the government defining ownership interest as a term of art used in, and defined by, § 983. Likewise, the Government's Motion for Entry of Final Order of Forfeiture in the underlying criminal case is not made under oath and merely seeks forfeiture of whatever interests the criminal defendants had in the enumerated properties. Same is not a recognition of ownership interest as defined in the standing context so as to preclude the Government from taking the position that they do in this *in rem* civil proceeding.

Next, claimants broadly refer to the fact that the Government at the sentencing hearing in the underlying criminal proceeding offered sworn testimony under oath in support of its forfeiture efforts. Claimants do not cite specifically to where in the 200 page transcript this occurs and its significance. Likewise, Claimants direct this court's attention to references in the Government response to one or more of the criminal defendant's objections to the pre-sentence reports in which the Government generally refers to an individual criminal defendant's ownership interests in the Defendant Properties. Again, Claimants provide no citation to where in the record such general references can be found or even elaborate on their significance. Reference is also made to the fact that the Government obtained consents to forfeiture with other members of the LLC who were members of the four larger LLCs in the underlying criminal case, and somehow this is alleged by Claimants to be inconsistent with the Government's actions/statements in this case. These so-called inconsistencies and the several more that are cited by the Claimants and addressed below reveal yet another fatal flaw in the Claimants' line of attack and that is, they are, in point of fact, not inconsistent.

It is axiomatic that the Government may lawfully pursue alternative methods of obtaining forfeiture of the Defendant Properties. In the criminal case the Government sought and obtained forfeiture of the personal interests of the various defendants in the nine companies and in the Defendant Properties over which the court had *in personam* jurisdiction. In this civil action, the government is seeking forfeiture as against the entire world based upon *in rem* jurisdiction.

Claimants next point to the positions of the Government as being irreconcilable within this civil action on the matter of ownership. Specifically, Claimant Bayhill asserts that it relied upon Government representations that Bayhill's failure to file a claim would result in default. It seeks to take solace in the Government Motion to Dismiss the claims of Robert and Mary Ellen Gannon in the instant civil case (DE 20). In that Motion the Government was seeking dismissal of the claims filed by the Gannon's as individuals, asserting that

whatever interest they owned in the Defendant Properties was through their LLC's and thus could not file personally. Such was not an assertion by the Government that the Gannon Family Company, LLC has standing as a substantive matter. Such would be litigated on the merits at a later date. What the Government Motion to Dismiss (DE 20) was focused on, was the individual Claimants' capacity to file a claim. Likewise unavailing is Bayhill's attempt to bootstrap itself into standing by judicial estoppel urging that the Government's position that Bayhill lacks standing in this case is inconsistent with the Government's earlier actions in this proceeding in which it sought entry of default for Bayhill, LLC's failure to file a proper sworn-to claim. Contrary to Bayhill's contention, the Government's earlier attempt to obtain default judgment against Bayhill, LLC, was not in any way a recognition by the Government that Bayhill, LLC, as a Claimant, had standing to file a claim in the action as amended with the filing of the Amended Complaint. In sum, the Court does not find a clear inconsistency between the position of the government in the relevant proceedings so as to invoke principles of judicial estoppel.

Likewise, Claimants have failed to convince the Court that judicial estoppel is necessary to avoid the risk of inconsistent court determinations. Judge Middlebrooks in the criminal case did not consider whether or not and under what circumstances the criminal defendants there or the Claimants here had an ownership interest as defined in the instant *in rem* § 983 context. In the context of the instant *in rem* forfeiture proceeding this court has yet to reach any substantive determination of who or which entity has an ownership interest under § 983.

■ Further, whether or not Bayhill, LLC relied upon what it viewed and understood the Government position to be at some earlier time is of little import. As the intent of judicial estoppel is to protect the integrity of the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary. *Burnes,* 291 F.3d at 1286 (explaining that because "the doctrine of estoppel is intended to protect the courts rather than the litigants, prejudice to the opponent from the change of position is not a necessary element of judicial estoppel").

Additionally, Claimants have offered no evidence or argument in support of the requirement that the alleged inconsistencies be shown to have been "calculated [by the opponent] to make a mockery of the judicial system." *Id.* at 1273. This factor requires the Court to consider whether the Government acted with "intent"; simple negligence or sloppiness when it comes to using legal terms of art will not do. *Id.* at 1285 (noting that intent for purposes of judicial estoppel requires "intentional contradictions, not simple error or inadvertence."). "Courts have used a variety of metaphors to describe the doctrine, characterizing it as a rule against playing fast and loose with the courts, blowing hot and cold as the occasion demands, or having one's cake and eating it too. Emerson's dictum that a foolish consistency is the hobgoblin of little minds cuts no ice in this context." *In re Coastal Plains Inc.,* 179 F.3d 197, 205 n. 1 (5th Cir.1999). Here Claimants have simply presented no evidence that the Government in the instances cited "played fast and loose with the courts" or in any other respect set out to "make a mockery of the judicial system."

■ What is crystal clear from the foregoing, is the Claimants' complete and utter failure to establish the applicability of any of the various factors the courts consider in determining whether the judicial estoppel doctrine applies. For this

reason alone, Claimants' attempt to invoke the doctrine of judicial estoppel must fail. Claimants' efforts must fail for an additional and even more important reason, however, and that is the well established principle, applied "without exception," that "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)(noting that subject matter jurisdiction functions as a restriction on federal power and carries with it certain "legal consequences" including the principle that "no action of the parties can confer subject-matter jurisdiction upon a federal court" and explaining that because a federal court's subject matter jurisdiction may never be waived, "the consent of the parties is irrelevant" and "principles of estoppel do not apply"). *See also Westinghouse Electric Co. v. United States,* 56 Fed.Cl. 564, 570–71 (Fed.Cl.Ct.2003)(unpublished)(noting that a party cannot rely upon judicial estoppel to establish contract rights), *aff'd,* 97 Fed.Appx. 931 (Fed.Cir. 2004). It follows from these well-settled principles that Claimants may not do what they have attempted to do here and that is, employ judicial estoppel to create subject matter jurisdiction where otherwise there is none. *Insurance Corp. of Ireland,* 456 U.S. at 702, 102 S.Ct. 2099. Claimants have cited no authority, nor based on the legal principles enunciated above could they, for the proposition that judicial estoppel, if applied, would relieve Claimants of their burden to plead and substantively establish standing in the forfeiture context. Accordingly, this court concludes that Claimants have failed to carry their burden of persuasion as a factual and legal matter in this challenge. As such, the court finds that judicial estoppel is inapplicable in this proceeding and, if it did apply, could not in any event create subject mat-

ter jurisdiction by way of relieving Claimants of the need to demonstrate standing.

## IV. *CONCLUSION*

In conclusion, the Court finds that as a technical matter, Bayhill's Claim is not deficient for failing to comply with Supplemental Rule G(5)(a)(i)(B) & (C). Substantively, however, the Court finds that both Bayhill and Gannon lack standing in this matter, providing a basis for the Government's motion to strike pursuant to Supplemental Rule G(8)(c)(i)(B), "because the claimant lacks standing." The Court further finds, upon careful consideration of the pleadings and evidence filed, the oral argument presented and all relevant case law, that Claimants lack standing so as to entitle the Government to summary judgment. In so concluding, and based upon the facts and reasoning contained in the within report, the Court is satisfied there are no genuine issues as to any material fact and that viewing all evidence and factual inferences arising therefrom in the light most favorable to Claimants, as the non-moving parties, the Government is entitled to judgment as a matter of law. Accordingly, and based upon the above and foregoing, it is hereby, respectfully

**RECOMMENDED** that the Government's Motion to Strike Claims of Gannon and Bayhill for Lack of Standing and/or for Partial Summary Judgment (DE 198) be **GRANTED IN PART AND DENIED IN PART AS FOLLOWS.** Specifically, the Court hereby recommends that portion of the Government's Motion seeking partial summary judgment be **GRANTED** and that portion of the Government's Motion seeking an order striking the Claims be **DENIED AS MOOT.** It is further ordered that the Government's request contained in the Motion for attorney's fees, which Claimants failed to address, is denied without prejudice and with leave to re-file

same once the District Court has ruled on the within Report and Recommendation and once any applicable appeal time has run. In this regard and before any such request for fees is re-filed, counsel for the parties are ordered to confer in an effort to resolve by agreement the issue of fees raised in connection with both the Government's request at issue here and the outstanding fee award due claimants, which remains subject to contention and dispute by the Government.

The parties have fourteen (14) days from the date of this Report and Recommendation within which to serve and file written objections to it, if any, with the Honorable Kenneth A. Marra, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745, 749 (11th Cir.1988).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Florida, this 23rd day of July, 2010.